1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

7

## SOUTHERN DISTRICT OF CALIFORNIA

8

9 | FELIPA VALENCIA VELAZQUEZ,           CASE NO. 13cv680-WQH-DHB
10 | an individual, and on behalf of all
others similarly situated,                          ORDER

11 |                                            Plaintiff,
      vs.
12 | SEARS, ROEBUCK AND CO., a New
York Corporation; SEARS FULL
13 | LINE STORES, an unknown business
entity; and DOES 1 through 50,
14 | inclusive,
15 |                                         Defendants.

16 HAYES, Judge:

17        The matter before the Court is the Motion to Compel Arbitration and Stay Action,

18 filed by Defendants.  (ECF No. 10).

19 ## I.      Background

20        On December 10, 2012, Plaintiff initiated this action by filing a Complaint in San

21 Diego County Superior Court against Defendants Sears, Roebuck and Co. and Sears

22 Full Line Stores (collectively, "Sears" or "Defendants").   (ECF No. 1-1).   The

23 Complaint asserts four class-wide claims for relief based upon Plaintiff's employment

24 with Sears.  The four claims are: (a) failure to pay minimum wages; (b) failure to

25 provide accurate statements and maintain required records; (c) failure to pay all wages

26 due to discharged or quitting employees; and (d) unlawful business practices.

27        On March 19, 2013, Sears removed the action to this Court, alleging diversity

28 subject-matter jurisdiction.  (ECF No. 1).

1  On May 3, 2013, Sears filed the Motion to Compel Arbitration and Stay Action.

2  (ECF No. 10).  On May 28, 2013, Plaintiff filed an opposition to the Motion to Compel

3  Arbitration and Stay Action.  (ECF No. 12).  On June 3, 2013, Sears filed a reply.  (ECF

4  No. 13).

5  **II.    Facts**

6  During the week of April 2, 2012, Sears introduced an arbitration

7  policy/agreement ("Agreement") under which participating employees and Sears each

8  waived the right to pursue employment-related claims in court, and agreed instead to

9  submit such disputes to binding arbitration.  (Kaselitz Decl. ¶ 5, ECF No. 10-1).  The

10  Agreement contains an introduction, which states:

> Under this Agreement, and subject to certain exceptions specified within the Agreement, all employment-related disputes between you ('Associate') and Company that are not resolved informally shall be resolved by binding arbitration in accordance with the terms set forth below.  This Agreement applies equally to disputes related to Associate's employment raised by either Associate or by Company.
>
> **Accordingly, Associate should read this Agreement carefully, as it provides that virtually any dispute related to Associate's employment must be resolved only through binding arbitration.  Arbitration replaces the right of both parties to go to court, including the right to have a jury decide the parties' claims.  Also, this Agreement prohibits Associate from filing, opting into, becoming a class member in, or recovering through a class action, collective action, representative action or similar proceeding.**
>
> **If Associate does not wish to be bound by the Agreement, Associate must opt out by following the steps outlined in this Agreement within 30 days of receipt of this Agreement.  Failure to opt out within the 30-day period will demonstrate Associate's intention to be bound by this Agreement and Associate's agreement to arbitrate all disputes arising out of or related to Associate's employment as set forth below.**

*Id.*, Ex. A at 1, ECF No. 10-2 (emphasis in original).  The Agreement states:

> Except as it otherwise provides, this Agreement applies, without limitation, to disputes regarding the employment relationship, trade secrets, unfair competition, compensation, pay, benefits, breaks and rest periods, termination, discrimination, or harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans with Disabilities Act, Age Discrimination in Employment Act, as amended, Family and Medical Leave Act, Fair Labor Standards Act, Employee Retirement and Income Security Act, Genetic Information Non-Disclosure Act, and any and all state statutes addressing the same or similar subject matters, and all other state or federal statutory and common law claims.

1  *Id*.

2       Prior to September 14, 2012, Sears employees participated in annual training and

3  acknowledged their receipt of various employment policies using Sears' My Personal

4  Information ("MPI") portal.  (Kaselitz Decl. ¶ 7, ECF No. 10-1).  Once logged into the

5  MPI portal, employees may print any documents or pages viewed in the portal, using

6  Sears-owned equipment and supplies and at no cost to the employee.  *Id*. ¶ 9.

7  Employees were required to complete a series of policy acknowledgements in the MPI

8  portal.  *Id*. ¶ 11.  Prior to acknowledging the receipt of the Agreement, the link to the

9  Agreement appears in red-colored font on the "Policy Acknowledgements" page.  *Id*.

10  ¶ 12.  Upon clicking the link for the Agreement acknowledgement, the employee is

11  brought to a page containing four additional links, labeled (a) "Arbitration

12  Policy/Agreement (PDF)"; (b) "Arbitration Policy/Agreement (Text)"; (c) "Opt Out

13  form Action is required to protect your legal rights to sue the Company in court and/or

14  to participate in any way in a class action, collective action or representative action";

15  and (d) "Acknowledgement receipt of the Arbitration Policy/Agreement."  *Id*. ¶ 13.

16  After reviewing the Agreement and Opt Out form, employees are asked to acknowledge

17  their receipt of the Agreement by clicking on the "Acknowledge receipt of the

18  Arbitration Policy/Agreement" link.  *Id*. ¶ 14.  Upon clicking on the acknowledgement

19  link, the employee receives the following message on the acknowledgement page:

20       By clicking below, I acknowledge that I have reviewed and agreed to the
       terms and conditions set forth in the Arbitration Policy/Agreement.  I also
21       understand that I may change my mind and opt out of the Agreement
       within 30 days of today's date by returning the Arbitration
22       Policy/Agreement Opt Out form located at the end of the Agreement.

23  *Id*. ¶ 15.

24       Plaintiff was hired by Sears in June 2002.  *Id*. ¶ 21.  Plaintiff received the

25  Agreement during the week of April 2, 2012.  *Id*. ¶ 22.  On April 12, 2012, Plaintiff

26  acknowledged receipt of the Agreement by clicking "Yes" and "Submit" on the

27  Agreement's acknowledgement page.  *Id*. ¶ 23; *see also id*., Ex. B, ECF No. 10-3 at 9.

28  Following her review and acceptance of the Agreement, Plaintiff had a 30-day window

1   during which she could revoke her acceptance of the Agreement. (Kaselitz Decl. ¶ 25,

2   ECF No. 10-1). Plaintiff did not revoke her acceptance of the Agreement within the

3   30-day window, nor did she attempt to do so at any time thereafter. *Id.* ¶ 26.

**III.    Contentions of the Parties**

Sears contends:

> Plaintiff and Sears are parties to a valid and binding arbitration agreement in which both parties expressly agreed that matters arising out of Plaintiff's employment shall be resolved on an individual basis through neutral and binding arbitration. As Plaintiff expressly agreed to abide by the terms of the arbitration agreement and because she declined to exercise her right to opt out of that agreement, she is now precluded from bringing this putative class action against Sears. Accordingly, Sears requests that the Court: (1) compel the individual arbitration of Plaintiff's claims; and (2) stay this litigation as required by the Federal Arbitration Act....

(ECF No. 10 at 6). Sears contends that the Agreement is enforceable and neither

procedurally nor substantively unconscionable under California law.

Plaintiff contends:

> Defendant's Motion to Compel Arbitration should be denied in its entirety because the Arbitration Agreement is both substantively and procedurally unconscionable under California contract law.... Sears' Arbitration Agreement was not drafted in favor of arbitration or in furtherance of the FAA, but instead, for improper use so that Sears gains all the advantage over its employees in employment disputes. Based upon the numerous illegal provisions of the Agreement, which cannot be effectively severed, the entire Arbitration Agreement should be deemed unenforceable against Plaintiff.

(ECF No. 12 at 6). Plaintiff alternatively requests that the Court allow Plaintiff

"sufficient time to conduct limited discovery" applicable to the factors in *Gentry v.*

*Superior Court*, 42 Cal. 4th 443, 471 (Cal. 2007). *Id.* at 19.

**IV.    Discussion**

**A.    Federal Arbitration Act**

The Federal Arbitration Act ("FAA") "was enacted ... in response to widespread

judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 131

S. Ct. 1740, 1745 (2011) (citation omitted). Section 2 of the FAA states: "A written

provision in any ... contract evidencing a transaction involving commerce to settle by

arbitration a controversy thereafter arising out of such contract or transaction ... shall

be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 of the FAA "reflect[s] both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Concepcion*, 131 S. Ct. at 1745 (quotations omitted). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Id*. at 1745-46 (citations omitted).

"The basic role for courts under the FAA is to determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (quotation omitted). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91-92 (2000).

In this case, it is undisputed that the Agreement encompasses the dispute at issue. Plaintiff contends that the Agreement is not valid and enforceable because the Agreement is unconscionable under California law. Plaintiff contends that "the class action and PAGA waivers [in the Agreement] are unenforceable on a separate ground because under controlling California law, an employee cannot waive his statutory rights under the California Labor Code."[1]  (ECF No. 12 at 6).

**B.    Unconscionability**

"Under the FAA savings clause, state law that arose to govern issues concerning the validity, revocability, and enforceability of contracts generally remains applicable to arbitration agreements." *Kilgore*, 718 F.3d at 1058 (quotation omitted). "Thus,

---

[1] "PAGA" refers to the Private Attorney General Act, California Labor Code §§ 2698, *et seq*.

generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Id.* (quotation omitted). "Under California law, a contractual provision is unenforceable if it is both procedurally and substantively unconscionable." *Id.* (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 24 Cal. 4th at 114. "[T]he party opposing arbitration has the burden of proving the arbitration provision is unconscionable." *Higgins v. Superior Court*, 140 Cal. App. 4th 1238, 1249 (2006) (quotation omitted).

### 1.    Substantive Unconscionability

"Substantive unconscionability focuses on the one-sidedness or overly harsh effect of the contract term or clause." *Kilgore*, 718 F.3d at 1058 (quotation omitted). "The term [substantive unconscionability] focuses on the terms of the agreement and whether those terms are so one-sided as to *shock the conscience*." *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1075 (9th Cir. 2007) (quotation omitted), *overruled on other grounds by Kilgore v. KeyBank, Nat'l Ass'n*, 673 F.3d 947, 960 (9th Cir. 2012). Plaintiff contends that the Agreement is substantively unconscionable because (a) "it contains a *discretionary* attorneys' fees provision, when under the Labor Code, attorney's fees are mandatory in connection with Plaintiff's claims in the instant action"; (b) "the Agreement ... contains a one-sided confidentiality provision that only benefits the Defendant"; and (c) "the class action, collective action and PAGA waivers contained in the Agreement are ... substantively unconscionable and demonstrate Defendant's impermissible attempt at forum shopping." (ECF No. 12 at 6).

### a.    Attorney's Fees

The Agreement provides:

> The Arbitrator may award any party any remedy to which that party is entitled under applicable law, including an award of attorneys' fees, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented

to and decided by the Arbitrator.  No remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Agreement.

(Kaselitz Decl., Ex. A at 5, ECF No. 10-2).  Plaintiff construes this language to mean that "it is within the arbitrator's discretion whether or not to award any attorney's fees and/or costs at all." (ECF No. 12 at 7).  So construed, Plaintiff contends that "this is in direct contravention to the [California] Labor Code's mandatory award of attorney's fees and costs provisions pursuant to Sections 1194 and 226." *Id*.  Sears construes the above language in the Agreement to mean "that the arbitrator has the power to award any remedy to which a party is entitled, and that no party shall be deprived of any remedy to which it is entitled." (ECF No. 13 at 9).  Sears contends: "No reasonable person could read these sentences and conclude that the arbitrator can discretionarily refuse to award a remedy to which a party is legally entitled.  A mandatory award of attorneys' fees and costs pursuant to Labor Code Sections 1194 and 226 is a remedy otherwise available to an individual in a court of law – thus, such a remedy is not forfeited by virtue of the Agreement." *Id.*

The Court finds that the reasonable construction of the language at issue in the Agreement is that if an employee would be entitled to a mandatory attorney's fee award in a court of law, then that remedy is not "forfeited by virtue of th[e] Agreement." (Kaselitz Decl., Ex. A at 5, ECF No. 10-2).  Even if the language at issue were ambiguous, the Court would interpret the language in a manner that would render it lawful. *See Pearson Dental Supplies, Inc. v. Superior Court*, 48 Cal. 4th 665, 682 (2010) ("When an arbitration provision is ambiguous, we will interpret that provision, if reasonable, in a manner that renders it lawful, both because of our public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution, and because of the general principle that we interpret a contractual provision in a manner that renders it enforceable rather than void.") (citations omitted).  The Court finds that the language at issue does not render the Agreement substantively unconscionable.

1

**b.     Confidentiality Provision**

2      The Agreement provides: "Except as may be permitted or required by law, as

3 determined by the Arbitrator, neither a party nor an Arbitrator may disclose the content

4 or results of any arbitration hereunder without the prior written consent of all parties."

5 (Kaselitz Decl., Ex. A at 5, ECF No. 10-2).  Plaintiff contends that this confidentiality

6 provision is substantively unconscionable because the proposed class consists of over

7 10,000 employees, and "the confidentiality provision prevents other employee-plaintiffs

8 from accessing precedent while allowing Defendant to gain the advantages of being a

9 'repeat player' in wage and hour arbitrations."

10      The Court of Appeals for the Ninth Circuit has "found confidentiality provisions

11 to be substantively unconscionable when applied to a large class of customers."

12 *Kilgore*, 718 F.3d at 1059 n.9 (citing *Ting v. AT&T*, 319 F.3d 1126, 1151-52 (9th Cir.

13 2003)); *but cf. Concepcion*, 131 S. Ct. at 1749 (an arbitration agreement "can be

14 specified, for example, ... that proceedings be kept confidential to protect trade

15 secrets"); *Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 178 (2002) ("While [the

16 California] Supreme Court has taken notice of the 'repeat player effect,' the court has

17 never declared this factor renders the arbitration agreement unconscionable per se.").

18 However, the Court of Appeals for the Ninth Circuit most recently has stated that "the

19 enforceability of the confidentiality clause is a matter distinct from the enforceability

20 of the arbitration clause in general.  Plaintiffs are free to argue during arbitration that

21 the confidentiality clause is not enforceable." *Kilgore*, 718 F.3d at 1059 n.9.  Moreover,

22 the California Court of Appeal has found that a nearly identical confidentiality clause

23 does not render an arbitration agreement unenforceable.  *See Htay Htay Chin v.*

24 *Advanced Fresh Concepts Franchise Corp.*, 194 Cal. App. 4th 704, 714 (2011).

25      The Court finds that the confidentiality provision does not render the Agreement

26 substantively unconscionable.  Plaintiff is "free to argue during arbitration that the

27 confidentiality clause is not enforceable." *Kilgore*, 718 F.3d at 1059 n.9.

28

**c.     Class Action, Collective Action and PAGA Waivers**

The Agreement provides that "[t]here will be no right or authority for any dispute to be brought, heard, or arbitrated as a class action," a collective action, or a PAGA action.  (Kaselitz Decl., Ex. A at 3, ECF No. 10-2).  Plaintiff contends that this provision and a related severability provision[2] "yields improper forum shopping" and "reflect ... [a] mistrust of arbitration."  (ECF No. 12 at 11-2).

Plaintiff's contention that the Agreement's "ban on class arbitration is unconscionable under California law" is an argument that "is now expressly foreclosed by *Concepcion*, 131 S. Ct. at 1753." *Kilgore*, 718 F.3d at 1058.  The severability provision, which seeks to avoid class arbitrations, is consistent with *Concepcion*'s discussion of why "[a]rbitration is poorly suited to the higher stakes of class litigation." *Concepcion*, 131 S. Ct. at 1752; *see also id*. at 1751 ("[C]lass arbitration, to the extent it is manufactured by [a California rule that made class action waivers unconscionable] rather than consensual, is inconsistent with the FAA.").  The Court finds that the class action, collective action and PAGA waivers do not render the Agreement substantively unconscionable.

## 2.   Procedural Unconscionability

"Procedural unconscionability focuses on the factors of surprise and oppression." *Kilgore*, 718 F.3d at 1059 (quotation omitted).  Plaintiff contends that the Agreement is substantively unconscionable because "Sears fails to fully identify or attach the arbitration rules," the Agreement "is a lengthy, densely-worded 7-page typed document," and the "nature of the delivery of the arbitration agreement" and the opt-out procedure reflects an effort to "try to deter employees from opting out of the Arbitration Agreement."  (ECF No. 12 at 15).

"[I]f an employee has a meaningful opportunity to opt out of the arbitration provision when signing the agreement and still preserve his or her job, then it is not

---

[2]   The severability provision provides: "The Class Action Waiver, Collective Action Waiver and Private Attorney General Action Waiver shall be severable when a dispute is filed as an individual action and severance is necessary to ensure that the individual action proceeds in arbitration."  (Kaselitz Decl., Ex. A at 3, ECF No. 10-2).

procedurally unconscionable." *Davis*, 485 F.3d at 1073 (citing *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002); *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002)). In *Ahmed*, the Court of Appeals for the Ninth Circuit held that an employer's arbitration agreement was not procedurally unconscionable when the employee "was given a meaningful opportunity to opt out," because he was given an opportunity to opt out of the arbitration program by mailing a one-page form within thirty days. *Ahmed*, 283 F.3d at 1199-1200.

Plaintiff was given thirty days to opt out of the Agreement by mailing or faxing a one-page form within thirty days. (Kaselitz Decl. ¶¶ 18-19, ECF No. 10-1; *id.*, Ex. B, ECF No. 10-3 at 8). The Agreement was not combined with any other employment terms, conditions or agreements, and it notifies the employee in the "Introduction" on page one, in bold font: "**If Associate does not wish to be bound by the Agreement, Associate must opt out by following the steps outlined in this Agreement within 30 days of receipt of this Agreement. Failure to opt out within the 30-day period will demonstrate Associate's intention to be bound by this Agreement and Associate's agreement to arbitrate all disputes arising out of or related to Associate's employment as set forth below.**" *Id.*, Ex. A at 1, ECF No. 10-2. The Court does not find that the online method of presenting the Agreement, the arbitration rules,[3] and the opt-out procedure renders the Agreement procedurally unconscionable. The Court finds that Plaintiff had a "meaningful opportunity to opt out of the arbitration provision when signing the agreement and still preserve ... her job." *Davis*, 485 F.3d at 1073. The Court finds that the option to opt-out was not "buried in fine print ..., but was instead ..., clearly labeled, in boldface." *Kilgore*, 718 F.3d at 1059 (no procedural unconscionability when plaintiffs had time to reject the arbitration clause and the

---

[3] The Agreement provides that, unless the parties mutually agree on an arbitrator, the arbitration will be conducted by JAMS. (Kaselitz Decl., Ex. A at 4, ECF No. 10-2). The Agreement contains a hyperlink to the JAMS arbitration rules and procedures. *Id.* at 5. The Agreement also provides: "If you are unable to access or print the JAMS rules, you may obtain a printout of the rules from your Human Resources representative or from your manager." *Id.*

1  arbitration clause was not "buried in fine print in the Note, but was instead in its own
2  section, clearly labeled, in boldface").   The Court finds that the Agreement is not
3  procedurally unconscionable.

### C.   PAGA Claims

5       Plaintiff contends that "the class action and PAGA waivers [in the Agreement]
6  are unenforceable on a separate ground because under controlling California law, an
7  employee cannot waive his statutory rights under the California Labor Code."   (ECF
8  No. 12 at 6).  Plaintiff relies upon *Brown v. Ralphs Grocery Co.*, 197 Cal. App. 4th 489
9  (2011).

10      In *Brown*, a divided panel of the California Court of Appeal held that the waiver
11 in an arbitration agreement of an employee's right to pursue a PAGA action, was
12 unenforceable under California law.  The court stated that "representative actions under
13 the PAGA do not conflict with the purposes of the FAA.  If the FAA preempted state
14 law as to the unenforceability of the PAGA representative action waivers, the benefits
15 of private attorney general actions to enforce state labor laws would, in large part, be
16 nullified." *Id.* at 502 (citation omitted).

17      According to the United States Supreme Court, "[w]hen state law prohibits
18 outright the arbitration of a particular type of claim, the analysis is straightforward: The
19 conflicting rule is displaced by the FAA." *Concepcion*, 131 S. Ct. at 1747 (citation
20 omitted).  "[A] court may not rely on the uniqueness of an agreement to arbitrate as a
21 basis for a state-law holding that enforcement would be unconscionable, for this would
22 enable the court to effect what the state legislature cannot." *Id.* (quotation omitted).
23 "States cannot require a procedure that is inconsistent with the FAA, even if it is
24 desirable for unrelated reasons." *Id.* at 1753; *cf. Am. Exp. Co. v. Italian Colors Rest.*,
25 133 S. Ct. 2304, 2308 (2013) (holding that the FAA prohibits courts "to invalidate
26 arbitration agreements on the ground that they do not permit class arbitration of a
27 federal-law claim").  Accordingly, pursuant to the FAA, the PAGA and class action
28 waivers in the Agreement are enforceable. *See, e.g.*, *Morvant v. P.F. Chang's China*

1   *Bistro, Inc.*, 870 F. Supp. 2d 831, 846 (N.D. Cal. 2012) ("[T]he Court must enforce the

2   parties' Arbitration Agreement even if this might prevent Plaintiffs from acting as

3   private attorneys general."); *Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1181 (S.D.

4   Cal. 2011) ("Plaintiff's California Private Attorney General Act claim is arbitrable, and

5   ... the arbitration agreement's provision barring him from bringing that claim on behalf

6   of other employees is enforceable."); *Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122,

7   1142 (C.D. Cal. 2011) (same).

8       **D.   *Gentry***

9       In 2007, the California Supreme Court in held that class action waivers in

10   employment arbitration agreements could not be enforced if a class action claim would

11   be a significantly more effective way of vindicating plaintiffs' rights.  *See Gentry v.*

12   *Superior Court*, 42 Cal. 4th 443, 463 (2007) (listing four factors to determine if a class

13   action waiver in an employment arbitration agreement may be enforced: "the modest

14   size of the potential individual recovery, the potential for retaliation against members

15   of the class, the fact that absent members of the class may be ill informed about their

16   rights, and other real world obstacles to the vindication of class members' right to

17   overtime pay through individual arbitration.").  Plaintiff contends that "*Gentry* is still

18   binding under California law," and "Plaintiff therefore requests a brief time period in

19   which to conduct limited discovery applicable to the *Gentry* factors."  (ECF No. 12 at

20   17).

21       "States cannot require a procedure that is inconsistent with the FAA, even if it

22   is desirable for unrelated reasons."  *Concepcion*, 131 S. Ct. at 1753.  "Although

23   Plaintiffs argue that the claims at issue in this case cannot be vindicated effectively

24   because they are worth much less than the cost of litigating them, the *Concepcion*

25   majority rejected that premise."  *Coneff v. AT&T Corp.*, 673 F.3d 1155, 1159 (9th Cir.

26   2012) (holding that the FAA preempts a Washington state law invalidating class action

27   waivers).  In light of *Concepcion*, the Court finds that *Gentry* is not a viable basis for

28   invalidating the Agreement, and Plaintiff's request for discovery pursuant to *Gentry* is

denied.  *See, e.g.*, *Jasso v. Money Mart Exp., Inc.*, 879 F. Supp. 2d 1038, 1049 (N.D. Cal. 2012) ("In light of *Concepcion*, the California Supreme Court's decision in *Gentry* no longer provides a means to avoid enforcement of an arbitration agreement containing a class action waiver in an employment agreement."); *Lewis v. UBS Fin. Servs. Inc.*, 818 F. Supp. 2d 1161, 1167 (N.D. Cal. 2011) ("*Concepcion* effectively overrules *Gentry*."); *Murphy v. DIRECTV*, No. 2:07cv6465, 2011 WL 3319574, at *4 (C.D. Cal. Aug. 2, 2011) ("[I]t is clear to the Court that *Concepcion* overrules *Gentry*"), *aff'd in relevant part*, 2013 WL 3889158 (9th Cir. July 30, 2013).

### E.   Stay

The FAA provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in the proceeding with such arbitration.

9 U.S.C. § 3.  The Court finds that the claims raised by Plaintiff in the Complaint are referable to arbitration pursuant to the Agreement.  Sears has moved for a stay of this case pending the outcome of the arbitration proceedings.  (ECF No. 10 at 21). Accordingly, this action is stayed pursuant to 9 U.S.C. § 3.

### V.   Conclusion

IT IS HEREBY ORDERED that the Motion to Compel Arbitration and Stay Action is GRANTED.  (ECF No. 10).  Pursuant to 9 U.S.C. § 3, this action is STAYED pending arbitration.  The Clerk of the Court shall administratively close this case without prejudice to any party moving to have the case reopened for good cause.

DATED:  August 26, 2013

**WILLIAM Q. HAYES**
United States District Judge